UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GENEVIEVE TIMMONS,

                     Plaintiff,

      -against-                          5:18-CV-1087 (LEK/TWD)

KINGSLEY-JOHNSTON, INC., *et al.*,

                     Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

## I.  INTRODUCTION

Plaintiff Genevieve Timmons commenced this action pursuant to the Fair Housing Act ("FHA") and the New York State Human Rights Law ("NYSHRL") against Kingsley-Johnston, Inc., Cobblestone Square Apartments, LLC ("Cobblestone Square"), and Deanna Johnston (collectively, "Defendants") for discrimination in housing rental on the basis of disability. Following Genevieve Timmons' death in May 2019, William Timmons, her husband and administrator of her estate, was substituted as Plaintiff in this case.

Now before the Court is Defendants' motion for summary judgment seeking dismissal of the Complaint in its entirety. Dkt. Nos. 26-2 ("Johnston Affidavit"); 26-3 ("Walter Affidavit"); 26-4 ("MacKnight Affidavit"); 26-5 ("Statement of Material Facts" or "SMF"); 26-6 ("Memorandum"). Plaintiff opposes the motion. Dkt. Nos. 27 ("Opposition"); 27-1 ("Response to SMF"); 27-2 ("William Timmons Affidavit"); 27-3 ("Frawley-Clarke Affidavit"); 27-4 ("Kirchner Affidavit"); 28 ("Johnston Deposition, Part 1"); 28-1 ("Johnston Deposition, Part 2"); 28-2 ("Timmons Deposition"); 28-3 ("Interrogatories"). Defendants have filed a reply. Dkt. Nos. 29 ("Reply"); 29-1 ("Johnston Reply Affidavit").

For the following reasons, the Court denies Defendant's motion.

## II.   BACKGROUND

The following facts are undisputed unless otherwise noted. Genevieve and William Timmons began their tenancy of a ground-floor apartment at Cobblestone Square in September 2011. SMF ¶ 5. Defendant Kingsley-Johnston, Inc. is a property management company responsible for managing Cobblestone Square. Id. ¶ 1. Defendant Deanna Johnston is the president of Kingsley-Johnston, Inc. Id. ¶ 2.

The apartment buildings at Cobblestone Square are all accessed by a three- or four-step concrete staircase. Id. ¶ 4. Ground-floor apartments have outdoor patios with sliding glass doors. Id. ¶ 6. However, Cobblestone Square does not permit residents to use the patio doors for regular ingress and egress because Cobblestone Square cannot maintain a clear and level path from the patios to the sidewalks or parking lots. Id.; Johnston Aff. ¶ 5.

During her tenancy, Genevieve Timmons had multiple disabilities that affected her mobility, including osteoarthritis, connective tissue disease, and degenerative disc disease. Opp'n at 6–7; Timmons Aff. ¶¶ 4–5. In 2013, Genevieve Timmons began using a motorized scooter regularly. Opp'n at 7; Timmons Dep. at 7–8. By March 2017, Genevieve Timmons was incapable of leaving the apartment on her own by traversing the stairs at the main entrance of the apartment. Timmons Aff. ¶ 7. Instead, she used her scooter to travel between her apartment and the parking lot through the patio door and across the lawn. SMF ¶ 14; Opp'n at 7.

In late March 2017, Johnston spoke with Genevieve Timmons regarding parking and the storage of items on their patio, including a motorized scooter and a snow blower. SMF ¶¶ 11, 13; Response to SMF ¶¶ 11, 13. During the discussion, Genevieve Timmons told Johnston that she needed to use the scooter to get to the parking lot and that her husband would use the snow

blower to clear a path through the lawn. SMF ¶ 14; Response to SMF ¶ 14. Ms. Johnston replied that Cobblestone Square could not permit either and that Genevieve Timmons' use of the scooter was a serious liability concern. SMF ¶ 15; Response to SMF ¶ 15. In early June 2017, Johnston received a letter from Cobblestone Square's insurance agent, who reported that during a drive-through inspection he recently performed, he observed a tenant operating a motorized scooter on the lawn between the parking lot and the building. SMF ¶ 17; Response to SMF ¶ 17; Johnston Aff., Ex. C. He warned that this created liability exposure for Cobblestone Square. SMF ¶ 17; Response to SMF ¶ 17; Johnston Aff., Ex. C.

On July 14, 2017, Cobblestone Square informed the Timmonses that their lease would not be renewed after it expired on August 30, 2017. SMF ¶ 20. According to Johnston, the decision not to renew the lease was primarily based on their failure to move their cars, which impacted snow removal, as well as Genevieve Timmons' continued operation of the scooter on the lawn. Id. ¶¶ 7–8, 19. In August 2017, upon request of the Timmonses, Johnston agreed to a two-month extension of their lease until October 30, 2017. Id. ¶ 21.

In early October 2017, Katie Frawley-Clarke from CNY Fair Housing, a non-profit organization, sent Johnston a formal request for accommodation on behalf of Genevieve Timmons to continue using her scooter to travel between her apartment and the parking lot. Id. ¶ 29; Johnston Aff., Ex. F. Johnston denied the request because she did not consider it a reasonable accommodation. SMF ¶ 31. Johnston explained that Genevieve Timmons' use of the scooter on the lawn presented "a clear safety and liability concern," particularly during wet or snowy weather. Id.; Johnston Aff. ¶ 18. Johnston claimed that she consulted with Jack Walter, a contractor who had installed sidewalks at Cobblestone Square, and he estimated that it would cost $30,000 to install a sidewalk for Genevieve Timmons and an average of $1,200 per year to

3

maintain it. SMF ¶ 32; Johnston Aff., Ex. G. Johnston did not deem this option reasonable either, given the expense involved. SMF ¶ 32.

A week after Johnston's denial, Frawley-Clarke informed Johnston of the Ramp & Accessibility Modification Program ("Ramp Program") of the Onondaga County Community Development Division ("CDD"). Id. ¶ 34; Response to SMF ¶ 34; Frawley-Clarke Aff. ¶ 36. Frawley-Clarke explained that the County could potentially fund the installation of the sidewalk through the Ramp Program, but applicants must first obtain written consent of the property owner. Frawley-Clarke Aff. ¶ 38. After reviewing the application, the County would then establish work specifications and have the project bid upon by contractors. Id. However, Johnston refused to sign any authorization paperwork. SMF ¶ 35; Response to SMF ¶ 35. Frawley-Clarke recorded the conversation and noted that Johnston's reply was: "we're just not going to participate in that, because we would have to clean it in the winter." Frawley-Clarke Aff. ¶ 39. Johnston explained in her affidavit that she knew nothing about CCD or the Ramp Program and was concerned about authorizing the installation of the sidewalk without adequate specifications and Cobblestone Square's responsibility for later repairs caused by improper installation. Johnston Aff. ¶ 19.

On October 31, 2017, Frawley-Clarke forwarded to Johnston CCD's plan regarding the sidewalk, prepared by the agency's building inspector, Michael Decker. SMF ¶ 36; Johnston Aff., Ex. H. Decker estimated the cost of the installation to be $3,000 to $3,700. Johnston Aff., Ex. H. Walter, the construction contractor, and Cobblestone Square Maintenance Supervisor Tim Austin reviewed the plan and reported to Johnston multiple concerns not addressed by CCD's proposal, including grading and drainage issues. SMF ¶ 37; Walter Aff. ¶¶ 4–5. Between November 2017 and February 2018, Johnston had several exchanges with CNY Fair Housing

attorney Conor Kirchner but without much progress. See SMF ¶¶ 38–39, 43–48; Kirchner Aff. ¶¶ 6–10. Kirchner explained that the County would require Johnston's permission for the application process to begin and that she could address any specific concerns regarding the proposal with the County and the contractor who wins the bid for the project. Kirchner Aff. ¶ 8; SMF ¶ 46; Johnston Aff., Ex. J. Johnston maintained that she would not give permission without her concerns being addressed first. SMF ¶ 47; Johnston Aff. ¶ 27. As Johnston was negotiating with Kirchner, Decker visited Cobblestone Square to discuss the concerns regarding the proposal with Austin and Walter. SMF ¶ 41. While Austin and Walter believed that Decker would get back to them with a new plan addressing the issues they had discussed, Kirchner told Johnston in a later email that Decker had no concerns with the original proposal. Johnston Aff. ¶ 23; Walter Aff. ¶ 8; Johnston Aff., Ex. J.

On February 23, 2018, the Timmons' apartment was inspected by management. SMF ¶ 51. The parties dispute: (1) whether other Cobblestone Square units were also inspected; and (2) the condition of the Timmons' apartment. SMF ¶¶ 50–51; Response to SMF ¶¶ 50–51. While Defendants assert Cobblestone Square inspected every apartment, SMF ¶ 50, William Timmons states his neighbor told him his unit was never inspected, William Timmons Aff. ¶ 34. And while Defendants characterize the Timmons' home as being in "abhorrent condition," SMF ¶ 51, William Timmons said it was merely "cluttered," William Timmons Aff. ¶ 33. Cobblestone Square sent Genevieve and William Timmons a letter on March 12, 2018, stating that the condition of their apartment violated their lease and that the apartment would be re-inspected. SMF ¶ 52. On March 23, 2018, when the apartment was re-inspected, Defendants argue its condition was only "marginally better," SMF ¶ 53, a characterization Plaintiff again disputes, Response to SMF ¶ 53. Cobblestone Square sent Genevieve and William Timmons another letter

on April 10, 2018, asking them to call to schedule another inspection. SMF ¶ 54. When two weeks went by without a response, Johnston contacted Kirchner about scheduling another inspection. Id. ¶ 55. A third inspection occurred on May 11, 2018, id. ¶ 57; Plaintiff again disputes Defendants' contention that the unit presented "serious health and safety concerns." Id.; Response to SMF ¶ 57.

Johnston eventually contacted Cicero Town Code Enforcement and asked it to inspect the apartment. SMF ¶ 58. Johnston thought this would force Genevieve and William Timmons to remedy the allegedly dangerous condition of their apartment. Id. On June 5, 2018, the Town of Cicero performed an inspection, issuing a notice of violation and allowing two weeks to cure. SMF ¶ 59. The Town of Cicero re-inspected the unit on June 26, 2018 and found it to be compliant. SMF ¶ 60.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Hence, "a court's duty in reviewing a motion for summary judgment is 'carefully limited' to finding genuine disputes of fact, 'not to deciding them.'" Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 WL 4805354, at *8 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## IV.    DISCUSSION[1]

Defendants moved for summary judgment, seeking dismissal of the Complaint in its entirety. Mem. at 1. First, Defendants argue that Plaintiff's failure-to-accommodate claim should

---

[1] The Court first addresses Defendants' argument that Genevieve Timmons' death mooted the claim for relief that would require Defendants to complete the requested modification. See Mem. at 21. In an FHA case, another federal district court looked to state survival law to determine whether the action survived the original plaintiff's death, concluding that it did. See Montgomery v. Buege, No. 08-CV-385, 2009 U.S. Dist. LEXIS 32918, at *5 n.2 (E.D. Cal. Apr. 14, 2009). Because New York state law allows a decedent's personal

7

be dismissed because her requested accommodation was not reasonable. Id. at 16–17. Second, Defendants assert that they did not unlawfully deny Plaintiff's modification request[2] since Plaintiff has failed to provide a reasonable description of the proposed modification. Id. at 17–18. Third, Defendants contend that Plaintiff's retaliation claim must also fail because there was no causal connection between her request for accommodation and the non-renewal of her yearly lease, the inspection of her apartment, or Defendants' complaint to the Cicero Town Code Enforcement Office. See Mem. at 18–21. The Court considers these arguments in turn.[3]

## A. Reasonable Accommodation

The FHA, as amended by the Fair Housing Amendments Act in 1988, prohibits housing providers from discriminating against residents because of their disability.[4] 42 U.S.C. §

representative to continue an action, see New York Consolidated Laws § 11-3.2(b), the Court determines the claim is not moot.

[2] Under the FHA, a reasonable modification is a structural change made to the premises, while a reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service. See U.S. Dep't of Hous. & Urban Dev. & U.S. Dep't of Justice, Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Modifications Under the Fair Housing Act (March 3, 2008) ("Joint Statement on Reasonable Modifications"). Here, Plaintiff has requested the accommodation to operate her motorized scooter on the lawn between her apartment patio and the parking lot, and the modification to install a sidewalk there. See Mem. at 16; Opp'n at 12, 16.

[3] Defendants also argue that Plaintiff's disparate treatment claim—that Defendants refused to renew her yearly lease because of her disability—should be dismissed. Mem. at 13–15. However, the Court does not find that Plaintiff has raised a disparate treatment claim based on the non-renewal of the lease that is distinct from her retaliation claim. See generally Compl. But even if she has, the disparate treatment claim is deemed waived since Plaintiff makes no mention of this claim in her Opposition. See generally Opp'n; see also Dark Storm Indus. LLC v. Cuomo, No. 20-CV-360, 2020 WL 3833107, at *15 (N.D.N.Y. July 8, 2020) (Kahn, J.) ("Because Plaintiffs make no response to these portions of Defendants' Motion . . . the Court finds that Plaintiffs have abandoned these claims.").

[4] In the course of this opinion, the Court uses the terms "disability" and "handicap" interchangeably. Both terms have the same legal meaning. See Bragdon v. Abbott, 524 U.S. 624,

3604(f)(2). Among the discriminatory practices prohibited is "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford . . . person[s] [with disabilities] equal opportunity to use and enjoy a dwelling." Id. § 3604(f)(3)(B).

"In order to prove a failure-to-accommodate claim, a plaintiff must show (1) that the plaintiff had a handicap within the meaning of § 3602(h); (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation." Olsen v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014) (citations omitted). Defendants only argue that Plaintiff's requested accommodation was not reasonable. See Mem. at 16–17; Reply 4–5. There appear to be no disputes as to the other elements. See generally Mem.; Reply; see also Opp'n at 11. Thus, the Court focuses on whether Plaintiff's request was reasonable.

A reasonable accommodation is "one that gives the otherwise qualified plaintiff with disabilities meaningful access to the programs or services sought." Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 341 (E.D.N.Y. 2012). "Once the plaintiff has demonstrated that there is a plausible accommodation . . . the defendant bears the burden of proving that the requested accommodation is not reasonable." McElwee v. Cty. of Orange, 700 F.3d 635, 642 (2d

---

631 (1998) (noting that the definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"); U.S. Dep't of Hous. & Urban Dev. & U.S. Dep't of Justice, Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations Under the Fair Housing Act (May 17, 2004) ("Joint Statement on Reasonable Accommodations") at 1 n.2.

Cir. 2012). Determining whether a requested accommodation is reasonable "requires a complex balancing of factors" and is "highly fact-specific." Austin v. Town of Farmington, 826 F.3d 622, 630 (2d Cir. 2016).

Here, Defendants do not dispute that Plaintiff has met her initial burden to propose a plausible accommodation. See Mem. at 16–17. As Plaintiff correctly points out, the requested accommodation only required Defendants to let her continue using the scooter as she had already been doing. Opp'n at 12. Thus, to succeed in their summary judgment motion with regard to Plaintiff's failure-to-accommodate claim, Defendants must prove that there is no genuine dispute of fact on whether Plaintiff's request was not reasonable. But, for the following reasons, the Court finds that Defendants have failed to do so.

Under the FHA, a requested accommodation is not reasonable when it poses "an undue hardship or a substantial burden on the housing provider." Olsen, 759 F.3d at 156; see also Joint Statement on Reasonable Accommodations at 7 (explaining that an accommodation is not reasonable "if it would impose an undue financial and administrative burden on the housing provider or it would fundamentally alter the nature of the provider's operations").

Defendants argue that the accommodation requested by Plaintiff was not reasonable because operating a motorized scooter on uneven terrain is "inherently dangerous" and would expose them to "serious liability concerns," particularly in wet or snowy weather. Mem. at 16. Defendants explain that, as property managers, they "have a duty to maintain level and clear walkways from the parking lots to the apartment buildings." Id. "Failure to do so may lead to liability should a tenant or guest injure himself or herself on a walkway which is not properly maintained or cleared of snow or ice." Id. "For this reason, Cobblestone Square does not permit tenants on the ground floor apartments to use their patio doors as a primary means of ingress and

egress from the apartments to the parking lots." Id. Defendants cite a letter from Cobblestone Square's insurance representative, who expressed safety concerns after seeing Plaintiff driving her scooter on the lawn during an insurance inspection. Mem. at 16–17; Johnston Aff., Ex. C.

To demonstrate that operating a motorized scooter on uneven terrain is "indisputably dangerous," Defendants refer to a training guide from the National Institute for Rehabilitation Engineering that warns scooter users against various safety risks. See Reply at 4; Johnston Reply Aff., Ex. C. Defendants also suggest that the federal government, too, has realized the potential danger of operating scooters, as the joint statement by the Department of Justice and the Department of Housing and Urban Development notes that "[a] reasonable accommodation can be conditioned on meeting reasonable safety requirements, such as requiring persons who use motorized wheelchairs to operate them in a manner that does not pose a risk to the safety of others or cause damages to other persons' property." Reply at 4–5.

However, Defendants have failed to demonstrate that providing Plaintiff with this accommodation would impose any "undue hardship" or "substantial burden" on them. Other than "liability concerns," Defendants present virtually no "financial [or] administrative burden" in allowing Plaintiff to continue using her scooter through the patio exit. See Mem. at 16–17; Reply at 4–5. With regard to the insurance letter, nowhere did the insurance representative suggest that Defendants' insurance would terminate or increase in cost if Plaintiff continued to use her scooter. See Johnston Aff., Ex. G. No evidence suggests that Defendants' insurer was aware that Genevieve Timmons could not traverse the stairs due to her disabilities or that she had requested to use the patio door and scooter as an accommodation. See Johnston Dep., Part 1 at 51–52 (admitting that she did not speak with the insurance representative about this letter). It is unclear whether and to what extent Defendants' insurance would be adversely affected if they

had granted the accommodation, or how the insurer would compare the risk of Genevieve Timmons using the scooter with that of her taking the stairs. Thus, a genuine issue of fact exists as to whether the proposed accommodation would create an undue financial burden.

Moreover, liability concerns alone, without any individualized assessments based on reliable objective evidence, amount to no more than speculation. See Joint Statement on Reasonable Accommodations at 4 ("The Act does not allow for exclusion of individuals based upon fear, speculation, or stereotype about a particular disability or persons with disabilities in general. A determination that an individual poses a direct threat must rely on an individualized assessment that is based on reliable objective evidence."). Defendants argue that, unlike the cases cited by Plaintiff where defendants relied on "unwarranted speculation" or "blanket stereotypes" in denying the accommodation requests, the requested accommodation here was "indisputably dangerous" and posed safety risks to both Plaintiff and other tenants. See Reply at 4.

Contrary to what Defendants assert, the Court finds these cases analogous in that defendants only raised general safety concerns but failed to perform any individualized assessments. In Warren v. Delvista Towers Condo. Ass'n, Inc., the court held that a genuine issue of material fact existed as to whether the specific pit bull that plaintiff requested for accommodation posed a direct threat to other residents, despite defendant's reference to a county ordinance that banned pit bulls as a breed. 49 F. Supp. 3d 1082, 1087–89 (S.D. Fla. 2014) ("[T]he presumption in favor of a reasonable accommodation is such that the Fair Housing Act requires the existence of a significant risk—not a remote or speculative risk.") (internal quotation marks omitted). In Oconomowoc Residential Programs v. City of Milwaukee, the city denied a housing provider's request for a zoning variance to operate a group home for disabled individuals, citing numerous instances of abuse and neglect in other facilities that the provider

12

operated. The Seventh Circuit held that the provider's past problems with other facilities would not support the city's claim that the requested accommodation for this particular facility was unreasonable. 300 F.3d 775, 785–86 (7th Cir. 2002).

Likewise, here, Defendants have expressed general safety concerns associated with operating a scooter but have provided no evidence that Genevieve Timmons, by operating her scooter, posed any real threats to the safety of anyone. See Mem. at 16–17; Reply at 4–5. In fact, the proof is to the contrary, as Genevieve Timmons has been using her patio exit and scooter for well over two years without incident. See Opp'n at 13; Timmons Aff. ¶ 7. Thus, the Court finds that Defendants have failed to establish that the requested accommodation would impose undue hardship on them. See Tsombanidis v. City of W. Haven, 180 F. Supp. 2d 262, 293 (D. Conn. 2001) (dismissing the city's safety concerns because there was no proof that the residents of a sober house posed threats to others and evidence showed that none of the residents had been arrested since the inception of the house), aff'd in part, rev'd in part on other grounds sub nom. Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565 (2d Cir. 2003); Castellano v. Access Premier Realty, Inc., 181 F. Supp. 3d 798, 808 (E.D. Cal. 2016) (holding that defendant's general concerns with plaintiff's cat about fleas and safety of other residents did not rebut the reasonableness of the requested accommodation). Since there exists a genuine issue of material fact as to whether Plaintiff's requested accommodation was reasonable, the Court must deny Defendants' summary judgment motion with regard to Plaintiff's failure-to-accommodate claim.

### B.  Reasonable Modification

The FHA also makes it unlawful for a housing provider to refuse "to permit, at the expense of the [disabled] person, reasonable modifications of existing premises occupied . . . by such person if such modifications may be necessary to afford such person full enjoyment of the

premises." See 42 U.S.C. § 3604(f)(3)(A). But unlike accommodations, modifications involve structural changes made to the premises, and the tenants, rather than the housing providers, are responsible for the costs of the modifications. See id.; Joint Statement on Reasonable Modifications at 3.

Here, Defendants argue that they did not unlawfully deny Plaintiff's request to install a sidewalk as a reasonable modification. Mem. at 17. Defendants do not contest that they denied Plaintiff's proposed modification based on CCD's plan, which was Plaintiff's only proposal before she brought the instant case. See SMF ¶ 47 ("Without those concerns [with CCD's plan] being addressed, Ms. Johnston declined to sign the [authorization] letter."); Johnston Aff. ¶ 27; Opp'n at 16–17. What Defendants contest, however, is whether their denial was in violation of the FHA.

Under the FHA, a housing provider "may condition permission for a modification on the renter providing a reasonable description of the proposed modifications as well as reasonable assurances that the work will be done in a workmanlike manner." 24 C.F.R. § 100.203(b). Defendants assert that they did exactly that and "had every right" to do so. See Reply at 5. Defendants note that they have repeatedly raised their concerns with CNY Fair Housing and CCD and sought "a reasonable description of the work to be performed, as well as reasonable assurance the work would be performed in a workmanlike manner," but Plaintiff "repeatedly failed" and "in fact refused" to make such assurances. See Mem. at 17. Defendants note Plaintiff "offered nothing more than [a] rudimentary sketch" with the proposed sidewalks' measurements and without any construction details. This, they argue, makes their denial lawful because Plaintiff has failed to meet the prerequisite for permission. See id.; Mem. at 17. To succeed in their summary judgment motion, Defendants must establish that there is no genuine issue of fact

bearing on the issue of whether Plaintiff's proposed modification was inadequate. Upon review of the record, the Court finds that Defendants have failed to meet their burden.

Whether a description of a proposed modification is adequate necessarily depends on "the extent and nature" of the modification. See Joint Statement on Reasonable Modification at 12. Defendants stress that the CCD plan provides no "additional detail concerning the manner in which the work would be performed" and fails to address the multiple concerns raised by Defendants. See Reply at 5–6. Defendants argue that the report of Plaintiff's expert, Vincent Pietrzak, "is perhaps Defendants' best evidence of the insufficiency and inadequacy of the CCD sketch" because it is "far more detailed" and includes information concerning ADA standards and grading issues. Id. at 6. But the Court is unconvinced that the expert report, which aims to address the multiple concerns Defendants have raised, is the threshold that the proposed modification needs to reach.

Defendants also argue that Plaintiff failed to provide Defendants' with the "necessary reasonable assurance" that the CCD would have "performed the project in a workmanlike manner in full compliance with all codes and regulations," "[a]s proved . . .  by the opinions of Defendants[] [and] witness." See Reply at 6. However, without any elaboration on what these "opinions" are and how they proved Defendants' argument, the Court is hard-pressed to side with Defendants. And as Plaintiff points out, "it is unclear . . . why Defendants believed the County, a municipality with experience concerning codes and ADA standards, would fail to abide by those standards or not ensure that the modification is installed in a workmanlike manner." Opp'n at 19.

Consequently, a triable issue of fact exists as to whether Plaintiff failed to provide a reasonable description of the proposed modification and reasonable assurances that the work

would be done in a workmanlike manner. Accordingly, summary judgment for Defendants is inappropriate with regard to the reasonable modification claim.

### C. FHA and NYSHRL Retaliation

The FHA makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by" § 3604, among other FHA provisions. 42 U.S.C. § 3617. Plaintiff alleges that Defendants retaliated against Genevieve Timmons by not renewing the lease, repeatedly inspecting the apartment, and filing a complaint with Cicero Town Code Enforcement. Because a reasonable jury could find Defendants retaliated against Genevieve Timmons for her exercise of FHA- and NYSHRL-protected rights, the Court denies Defendants summary judgment on this claim as well.

To establish a prima facie case under either the FHA or the New York Human Rights Law, a plaintiff must show: (1) that he or she engaged in protected activity; (2) that the defendant was aware of this activity; (3) that the defendant took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. See Broome v. Biondi, 17 F. Supp. 2d 211, 218–19 (S.D.N.Y. 1997). Because the elements are the same, the Court analyzes Plaintiff's federal and state retaliation claims as one. See Lynn v. Vill. of Pomona, 373 F. Supp. 2d 418, 434 (S.D.N.Y. 2005).

Regarding the first element, whether Plaintiff engaged in protected activity, the Court has already determined that there is a triable issue of material fact as to whether the proposed accommodation and modification were reasonable. This finding is sufficient to create a genuine dispute of material fact as to the first element of a retaliation claim. See Istre v. Hensley P'ship, No. 15-CV-127, 2017 U.S. Dist. LEXIS 25413, at *22 (E.D. Tenn. Feb. 23, 2017).

Defendants argue that, with regard to their decision not to renew the Timmons' lease, Plaintiff cannot show a causal connection between the request for an accommodation and the decision not to renew because the latter preceded the former. See Mem. at 19. However, this argument ignores that Genevieve Timmons informed Johnston in March 2017 of her need to use her scooter to reach the parking lot. See SMF ¶ 14. This conversation preceded Defendants' July 14, 2017 letter informing Genevieve and William Timmons that their lease would not be renewed. See id. ¶ 20.

Defendants next argue that their inspections of the Timmons' apartment cannot be an adverse action under § 3617 because all Cobblestone Square units were inspected around the same time. Mem. at 20. However, Plaintiff has succeeded in raising a genuine dispute of material fact as to whether all Cobblestone Square apartments were indeed inspected. See William Timmons Aff. ¶ 34. A reasonable jury could find that the inspections of the Timmons' unit constitute threats or intimidation for their having submitted a modification request.

Finally, Defendants argue that Johnston's call to Cicero Town Code Enforcement could not have been retaliatory because Genevieve and William Timmons were given months to remedy their apartment's condition prior to Johnston taking action. Mem. at 20. "Had the Timmons[es] simply addressed the unsafe condition of the apartment, there would have been no reason for Ms. Johnston to contact the Town," according to Defendants. Id. at 21. However, a genuine dispute of material fact exists as to the condition of the apartment and, therefore, as to Johnston's motivation for contacting Cicero Town Code Enforcement. See Response to SMF ¶ 57. While it is true that "in this Circuit . . . a defendant in an FHA case can escape liability entirely if it proves it would have rendered the same decision had it not considered impermissible reasons," Mhany Mgmt v. Inc. Vill. of Garden City & Garden City Bd. of Trs., 985 F. Supp. 2d

390, 422 (E.D.N.Y. 2013), a reasonable jury could conclude that Johnston's proffered reason for

contacting Cicero is not factually supported, and thus that he would not have involved Cicero

had Plaintiff not sought a modification and accommodation. See Choices in Cmty. Living, Inc. v.

Petkus, 517 Fed. App'x 501, 506 (noting that an FHA plaintiff has the opportunity to show

pretext in a retaliation claim). The Court therefore denies summary judgment to Defendants on

Plaintiff's federal and state retaliation claims.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 26) is **DENIED**;

and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**[5]


DATED:     November 13, 2020
           Albany, New York


                                    Lawrence E. Kahn
                                    Senior U.S. District Judge

---

[5] **Error! Main Document Only.** Due to the delays and disruptions caused by the COVID-19 pandemic, some cases/motions were not disposed of prior to the end of the reporting period.